THE LAW OFFICE OF ALFRED R. HERNANDEZ

Alfred R. Hernandez, Esq. (Bar Number 192189)
1430 Truxtun Ave.
5th Floor
Bakersfield, California, 93301
Phone:  (661) 316-7955
Fax:  (661) 481-3601
Email:  al@alhernandez.biz

Counsel for Plaintiff:  Gloria Jean Isgar

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gloria Jean Isgar,<br><br>          Plaintiff,<br><br>     v.<br><br>City of Bakersfield;<br><br>City of Bakersfield Police Department;<br><br>Bakersfield Police Chief of Police Lyle D. Martin, sued in his official capacity,<br><br>Does 1-20, inclusive sued in their official and individual capacities<br><br>          Defendant. | No.<br><br>**COMPLAINT FOR:**<br><br>1. **Violation of Fourth and Fourteenth Amendments (42 U.S.C. § 1983) [All Defendants];**<br><br>2. **California Civil Code Section 52.1 et seq (The Bane Act) [All Defendants];**<br><br>3. **Negligence [All Defendants];**<br><br>4. **Intentional/Negligent Infliction Of Emotional Distress [All Defendants]**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ms. Gloria Jean Isgar hereby alleges that the City of Bakersfield (the "City"), The City of Bakersfield Police Department ("BPD"), its Police Officers (also "Officers" or "BPD Officers"), 911 Operators, and/or Dispatchers violated Plaintiff's Constitutional, statutory and/or other rights.

**NAUTRE OF CASE**

1

COMPLAINT FOR DAMGES: GLORIA JEAN ISGAR V. CITY OF BAKERSFIELD, CA. ET AL

1. The instant action alleges that BPD Officers grossly exceeded their Constitutional and/or statutory authority on May 26, 2017. On that date, as hereafter alleged, BPD Officers responded to multiple calls for assistance at Plaintiff's residence.

2. Plaintiff had suffered aggressive and menacing threats of physical violence and the attempted forcible entry of her home by seven (7) men, none of whom lived there and none of whom possessed any court order authorizing their presence at her home, much less possession thereof.

3. That the men's actions were unlawful and that they had no right to be present at Plaintiff's residence is virtually indisputable. "After" the events of May 26, 2017, alleged herein, Plaintiff sought a domestic violence restraining order ("DVRO") against the leader of the aforementioned men. The Honorable Judge of the Superior Court John L. Fielder presided over trial on the merits of said petition in Kern County Superior Court case number BFL-17-002860, on July 12, 2017.

4. The sworn testimony therein was limited to the events occurring at Plaintiff's residence on May 23, and May 26, 2017 (the same events as also alleged herein). Judge Fielder issued the requested DVRO and restrained the men's leader from returning to Plaintiff's residence for the next 12 months.

5. Therefore, Plaintiff is informed and believes that BPD Officers should have easily determined the unlawful nature of the men's actions, restored the peace at Plaintiff's home, and forced the men to leave her property immediately thereby maintaining the status quo between competing civil claimants until proper civil court orders could be obtained.

6. Instead, BPD Officers engaged in extra-judicial and unilateral adjudication of civil matters and ordered the Plaintiff to surrender her residence of 14 months to the men mentioned above. Thus, BPD Officers revictimized a 68-year-old, female crime victim.

7. As a direct result of the Bakersfield Police Department's affirmative actions, failures to train and/or failures to supervise its officers, set forth in detail below, Plaintiff suffered damages. Said damages included the loss of property, unlawful eviction, emotional distress, pain and suffering, humiliation, and an on-going loss of trust in the notion that law enforcement is there to

COMPLAINT FOR DAMGES: GLORIA JEAN ISGAR V. CITY OF BAKERSFIELD, CA. ET AL

protect and to serve in case of emergency.  Plaintiff seeks compensation for said damages as set forth below.

## PARTIES

8.  Plaintiff Gloria Jean Isgar is a 68-year-old woman, and a Bakersfield resident at all relevant times hereto.

9.  On information and belief, Defendant City of Bakersfield (the "City") is a charter city of unknown structure organized within the laws and State of California, and with the capacity to be sued.  Plaintiff is informed and believes that the City is responsible for the actions, omissions, policies and procedures of the Bakersfield Police Department.

10.  Plaintiff is informed and believes that Defendant Bakersfield Police Department ("BPD"), is a department within the organizational structure of the City of Bakersfield.  Plaintiff is alternatively informed and believes that the City has delegated responsibility for the actions, omissions, policies and procedures of the Bakersfield Police Department and/or its chief, Mr. Chief Lyle D. Martin.

11.  On information and belief, Mr. Lyle D. Martin was the Chief of Police for the City of Bakersfield Police Department at the times relevant hereto and is sued in his official capacity.

12.  Plaintiff is unaware of, and unable to ascertain, the identities of the BPD Officers involved in the events at issue herein because no BPD officer authored any report regarding the events, which would have provided the Plaintiff with that information.  Therefore, Plaintiff is informed and believes that DOE Defendants 1-20 are all Officers with the City of Bakersfield Police Department involved with the actions at issue herein.

13.  Said DOE Defendants 1-20 are referred to herein as ("BPD Officers," and/or "Officers"), and also include the BPD supervisory Officers at the rank of Sergeant or higher, such as the watch commander on duty at the time of the events in question.  Plaintiff will seek leave to amend the instant complaint and/or conform the complaint to proof at the time of trial, once the identities of said DOE defendants is disclosed by the Bakersfield Police Department.  Plaintiff is informed and believes that all DOE Defendants were residents of the City of Bakersfield and employed as BPD Officers at the times relevant hereto.

3

**JURISDICTION**

14. This Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, in relation to the alleged violations of Plaintiff's Constitutional rights protected by the Fourth and Fourteenth Amendments to the United Constitution and violation of 42 U.S.C. § 1983.

15. This Court has supplemental jurisdiction over Plaintiff's state-law claims, pursuant to 28 U.S.C. 1367, as said claims arise from the same operative facts.  Said claims include general negligence, intentional and/or negligent infliction of emotional distress, as well as violation of California Civil Code 52.1 (the Bane Act).

**FACTS COMMON TO ALL COUNTS**

**1.  General Background**

16. All events at issue herein occurred at 2800 Laurel Drive, Bakersfield, Ca. 93304, (the "Property," and/or "Plaintiff's Residence").

17. All events at issue herein occurred between May 21, 2017 and May 26, 2017, unless noted otherwise.

18. Plaintiff, Gloria Jean Isgar, is a 68-year-old woman, and the daughter of Mr. John F. Castro.

19. Plaintiff was the primary caretaker of her father Mr. John F. Castro and resided with him at the Property for approximately 14 continuous months before the events at issue herein.

20. Plaintiff regularly received her mail at the Property and maintained her personal effects there, including but not limited to prescription medications.

21. Plaintiff's father, Mr. John F. Castro passed away unexpectedly on May 21, 2017.

22. Mr. John Ernest Castro, (hereinafter "Johnny" Castro) was the son of Mr. John F. Castro.

23. Mr. John Castro (hereinafter "John, John" Castro) is the son of "Johnny" Castro, and the grandson of Mr. John F. Castro.

**2.  Plaintiff's 911 Calls: May 23, 2017**

24. Plaintiff incorporates by reference the facts and allegations of all preceding paragraphs as though fully set forth herein.

4

COMPLAINT FOR DAMGES: GLORIA JEAN ISGAR V. CITY OF BAKERSFIELD, CA. ET AL

25. Plaintiff's father passed away unexpectedly on May 21, 2017.  Just two (2) days later, on May 23rd, the Plaintiff's brother John Ernest Castro (hereafter "Johnny Castro") and his four adult sons barged their way into Plaintiff's residence without her permission or invitation.

26. Initially, the men claimed that they were looking for a document related to Plaintiff's father.  However, the men soon became belligerent, threatening and physically intimidating.  For example, the men yelled at the Plaintiff something along the lines of "this is not your fucking house no more, you are going to have to get the fuck out."

27. Johnny Castro and his sons then callously began to carry off property from the room where Plaintiff's father had passed away just two days earlier.

28. Fearing for her safety the Plaintiff called 911 to request assistance at approximately 3:10 PM.  During this call, Johnny Castro and his sons can be heard in the background aggressively and angrily arguing with other members of Plaintiff's family.

29. Plaintiff informed the 911 Operator that her father had passed away just two days earlier.  She also informed the Operator that her brother (i.e., "Johnny Castro") had brought his four sons with him and that they were "ganging up on us."

30. With the situation continuing to escalate Plaintiff daughter, Ms. Tammy Lynn Hanson, also called 911 approximately six minutes later.  Recorded call audio reveals that Ms. Hanson was emotionally upset and/or frightened by the actions of her uncle "Johnny" Castro.  Ms. Hanson tearfully told the Operator that her mother lived at the Property and that her uncle Johnny Castro was threatening the Plaintiff and telling the Plaintiff to get the fuck out of the house.  The Operator assured Ms. Hanson, that they would "get someone out there to restore peace."

31. However, BPD did not respond in a timely manner, and Johnny Castro and his sons then fled the scene prior to arrival of police units.

32. When a BPD Officer did arrive, Ms. Hanson reported the actions of Johnny Castro and his sons to said officer.  Ms. Hanson specifically asked the responding officer if he was going to make a report of the events in question.

33. The Officer told Ms. Hanson that he would "not" make a report.  Rather, the officer

5

COMPLAINT FOR DAMGES: GLORIA JEAN ISGAR V. CITY OF BAKERSFIELD, CA. ET AL

repeatedly told Ms. Hanson that the situation was a "civil matter." The officer then told Ms. Hanson that she and/or the Plaintiff should call the police if the men returned.

**3. 911 Calls On May 26.**

34. Despite fleeing the Plaintiff's Residence to avoid contact with the police on May 23rd, Johnny Castro returned to the scene just three (3) days later and more emboldened than before.

35. This time Johnny Castro was accompanied not only by his four sons but also two men who were complete strangers to Ms. Isgar: that is, a total of seven (7) adult men.

36. Once again fearing for her safety, Plaintiff called 911 at approximately 8:07 P.M. Over the course of the ensuing 1 hour and 27 minutes, there were a total of ten (10) calls for assistance by various persons.

37. During one of these various calls, 911 Operators informed the Plaintiff that disputes over possession of personal or real property are civil matters.

38. Plaintiff is informed and believes that from the time Johnny Castro and his gang arrived at her Residence, until the eventual arrival of BPD Officers, approximately 2.0 hours had elapsed.

39. During the entirety of this time, Johnny Castro and his gang of men verbally threatened the Plaintiff with physical violence. For example, they threatened the Plaintiff by yelling "we are going to kick your ass, and fuck you up, if you don't let us into the house right now."

40. However, Johnny Castro and his men went beyond terroristic threats of violence against the Plaintiff. Until Officers arrived on scene, Johnny Castro and his men continuously and repeatedly attempted to physically force their way into Plaintiff's residence. They attempted to pry open the doors to Plaintiff's home and pounded on the walls, doors and structure of the home.

41. The men even went so far as to disrupt electrical service at the Property by trespassing to the rear of the home and disrupting service at the electrical supply box. Their actions left the home temporarily without electrical power.

42. Plaintiff is informed and believes that one of the Castro intruders also called 911 at

6

9:10 PM, more than an hour after Plaintiff's original 911 call for assistance.  Plaintiff is informed and believes that the Operator made the following or similar statements and gave the following or similar commands to the Castro caller:

> (1) "listen, what I need you guys to do, instead of trying to walk [inaudible] up in the home, is go and wait in your vehicles,"
>
> (2) I can "hear yelling and screaming right now,"
>
> (3) "the situation is not calm with you guys sitting right there,"
>
> (4) "walk down the street.  Go down the street and wait for the police.  You're [the Castro men] escalating the situation."

43.  However, Johnny Castro and his men refused to comply with those directives.  Instead, the men remained on the Property and continued their attempts at forcible entry of Plaintiff's home, as well as their threats of physical violence against her.

44.  Plaintiff is informed and believes that one of the Castro men again called BPD at 9:27 PM, seventeen minutes after they had been directed to walk down the street by 911 Operators.  Plaintiff is informed and believes that the following, various exchanges (in pertinent part and among other things) took place between the 911 Operator and the Castro caller.

> Operator: "Why don't you guys [the Castro intruders] leave and walk away or go down the street like I asked you to earlier?
>
> Castro Caller:  Why don't you guys send an officer out?  We don't gotta [sic] leave, my brother has paperwork.  We don't gotta [sic] leave.
>
> Castro Caller:  Get an officer out here. Give me your watch commander, I need your watch commander.  This thing is gonna [sic] come down real quick.

45.  Plaintiff is informed and believes that the documents and/or paperwork to which the Castro men referred was "not" a court order such as probate letters of administration, or a writ of possession in unlawful detainer.

46.  Lastly, Plaintiff is informed and believes that the initial call from dispatch to BPD units related that the events occurring at Plaintiff's residence were a "family 415" and a "civil matter."

### 4.  Action Of BPD Units Once On Scene

7

47. When Officers finally did arrive on scene the Plaintiff repeatedly explained that "she" lived at the Property and that the Castro men did not.  Plaintiff explained that she had called 911 just three (3) days before in relation to the same men.  She further explained that her father, John F. Castro, unexpectedly passed away just five (5) days earlier.

48. However, Officers did "not" simply restore the peace and maintain the status quo as between potential civil claimants.  Neither did BPD Officers simply require the departure of the seven men given the civil nature of the ultimate dispute, and the fact that none of the men had ever lived at the Property.

49. Instead, BPD Officers did the exact opposite.  They forced the Plaintiff to leave her residence without any notice, due process of law, or any order authorizing such action from any court of competent jurisdiction.

50. The Plaintiff specifically objected to the authenticity and/or legal effect of the documents Johnny and/or John, John Castro purportedly presented to Officers.  Plaintiff further informed Officers of her belief that the document was obtained by fraud, duress, or some other form of chicanery by Johnny and/or John, John Castro.

51. The lead officer stood very close to Ms. Isgar (making her feel as if he were "getting in her face") which made her feel extremely uncomfortable and intimidated.

52. Despite Plaintiff's objections, and the civil nature of the dispute, the Officer then spontaneously and unilaterally determined the rights and obligations of the parties.  The Officer told the Plaintiff that the challenged document "is valid."  He then stated something to the effect that "they [the unlawfully present intruders] are the owners now, you are just a renter and you have to leave."

53. After that improper adjudication and incorrect determination of law, the Officers ordered the Plaintiff to step out from her residence and turn her keys over to them.  Responding Officers informed Ms. Isgar that if she did not comply with these orders they would place her under arrest.  Those Officers then removed the Plaintiff's house key from her key ring and gave it over to Johnny Castro and/or his men.

54. Plaintiff was given only a few short moments to grab whatever personal belongings

COMPLAINT FOR DAMGES: GLORIA JEAN ISGAR V. CITY OF BAKERSFIELD, CA. ET AL

she could carry, because the officer was ordering her to "hurry up," and leave her home. Plaintiff was so frightened, shocked, distraught, and grief stricken that she was unable to gather her prescription medications in the process. This placed her health at additional risk beyond the fright, fear and despair already caused by the Officers' actions.

55. Once given possession of Plaintiff's house key and residence by BPD Officers, Johnny Castro and/or his men proceeded to enter and ransack her home. Because BPD Officers had summarily ordered her from her home under threat of arrest, Plaintiff could do nothing more than stand in the street and helplessly watch the continued violation of her residence, her father's memory, and her faith in the idea that law enforcement is there to protect and to serve.

56. Plaintiff is informed and believes that the Castro gang later nailed shut the doors and changed the locks to her residence, effectively blocking her return to her residence and continuing to alienate her from her personal property including vital medications (e.g., for the treatment of high blood pressure).

**5.  Domestic Violence Restraining Order Trial**

57. "After" the foregoing events, Ms. Isgar petitioned the Kern County Superior Court for a Domestic Violence Restraining Order ("DVRO") against her brother John Ernest Castro (identified herein as "Johnny Castro") who was the leader of the men unlawfully present at her home on May 26, 2017. Said DVRO matter is denominated as Kern County Superior Court Case Number BFL-17-002860.

58. The Honorable Judge of the Superior Court John L. Fielder presided over trial on the merits of the DVRO matter on July 12, 2017.

59. Judge Fielder took sworn testimony subject to direct and cross examination from multiple percipient witnesses and/or participants in the events at issue herein. Said witnesses included, among others, the Plaintiff herein (Ms. Gloria Isgar), Ms. Isgar's daughter Tammy Lynn Hanson, Ms. Isgar's nephew Mr. Luke Gore, John Ernest Castro (i.e. "Johnny Castro"), and John Castro (identified as "John, John Castro" herein) among others. Johnny Castro was the leader of the men unlawfully at Plaintiff's home, and John, John Castro was the person who claimed to have "documents" related to the Property. Said testimony was limited to the events of

9

COMPLAINT FOR DAMGES: GLORIA JEAN ISGAR V. CITY OF BAKERSFIELD, CA. ET AL

May 23rd and May 26th, the same events as alleged herein.

60. Based on said testimony, the Honorable Judge Fielder issued the DVRO. Importantly, Judge Fielder ruled in Plaintiff's favor even "after" she admitted to telling the seven Castro men, "if you do not leave, I'm going to shoot you." Thus, Judge Fielder necessarily must have determined that Ms. Isgar's statements were made in self-defense and/or in response to the life-threatening and imminent prospect of being physically attacked by seven men.

61. Perhaps most importantly, the Honorable Judge Fielder summarized the law in relation to the actions of Johnny Castro and his men. Judge Fielder explained that the only thing that would have allowed Castro and his men to be present at and take possession of the Plaintiff's residence was a court order authorizing such action.

62. Judge Fielder further stated that even if Johnny Castro and his men had such an order the sheriff's department, and not the men, would be the ones to enforce it. Judge Fielder told Johnny Castro that the reason for the law being this way is to avoid potential violence [presumably the very type of violence unfolding at Plaintiff's home on May 26th].

63. Lastly Judge Fielder also stated that he did not care what documents Johnny Castro and/or his men may have presented to BPD Officers. According to Judge Fielder, absent a court order Jonny Castro and/or his men had no lawful right to take possession of the Property.

**MONELL / QUALIFIED IMMUNITY ALLEGATIONS**

64. Plaintiff reasserts and incorporates by reference the allegations and facts asserted in all preceding paragraphs as though fully set forth herein, below.

**1. Officers Weren't Properly Trained Regarding The Constitutional Limits Of Their Authority.**

65. On multiple occasions during the dates at issue herein, the dispute between Plaintiff and her brother Johnny Castro was identified a "civil matter."

66. That law enforcement officers cannot adjudicate matters of civil law is common knowledge.

67. Yet, despite the obvious civil nature of the dispute, responding BPD Officers proceeded to adjudicate the matter anyway. They improperly and incorrectly adjudicated the

10

COMPLAINT FOR DAMGES: GLORIA JEAN ISGAR V. CITY OF BAKERSFIELD, CA. ET AL

rights and liabilities of competing civil claimants in the areas of probate, intestate succession, and real property law.

68.  As alleged above, Judge Fielder pointed out that a court order would be required to dispossess Plaintiff from her residence.  However, Plaintiff is informed and believes that Officers did "not" require any such order.  Instead, Plaintiff is informed and believes that Officers simply "gave" the Plaintiff's residence to the Castro men after being shown a disputed "document."  Thus, Plaintiff is informed and believes that BPD Officer are not sufficiently trained to tell the difference between the court orders and various other "documents."

69.  Thus, Plaintiff is informed and believes that the City the Bakersfield Police Department, its executive staff, and/or supervisory personnel failed to train its Officers as to what a court order "is," and how a court order might "look." Similarly, Plaintiff is informed and believes that BPD Officers were not trained to know the limits of their Constitutional authority with regard to civil matters.  As a direct result of said failures, the Plaintiff was forced to leave her home with little more than the clothes on her back, without her medications, and with a BPD Officer ordering her to "hurry up," and get out.

70.  If BPD alleges that it did train its Officers in this regard, then those officers must have chosen to simply ignore that training.  If that is the case, Plaintiff is informed and believes that BPD executives and/or supervisory personnel then must have failed in their duty to supervise said officers.

**2.  BPD Officers Were Not Trained To Employ Basic Law Enforcement Techniques.**

71.  Plaintiff is informed and believes, that BPD Officers were improperly trained as to basic law enforcement techniques such as responding to calls, investigation of incidents, and resolution of disputes.

72.  Plaintiff is informed and believes that, responding Officers merely needed to ascertain whether Johnny Castro or his men lived at Plaintiff's residence.  None of them did at the time, and Plaintiff is informed and believes that none of them ever had.  For example, Johnny Castro testified under oath at the DVRO trial that he did not live at the Property on May 26th, nor had he ever lived at the Property.

11

73. After that, Officers simply needed to determine whether any of the Castro men had a court order authorizing their presence at or possession of Plaintiff's residence and the personal property therein. As Judge Fielder stated, only a court order would suffice under the circumstances. At the DVRO trial it was apparent that neither Johnny Castro, nor his men, had such an order. Therefore, Judge Fielder restrained Johnny Castro's return to the Property and instructed him to initiate proper court proceedings.

74. Therefore, Plaintiff is informed and believes that Officers should have arrested the Castro men for any one of several criminal acts committed by them. Or, Officers should have simply ordered Johnny Castro and his men to leave the premises immediately.

75. Responding Officers not only refused to arrest any of the Castro men, Officers "gave" the men Plaintiff's residence and all its contents. Thus, BPD Officers do not appear trained in the recognition and control of criminal wrongdoing, and/or their lack of authority in civil matters.

76. Plaintiff is informed that such skills are basic and necessary to the adequate and proper performance of law enforcement duties. Plaintiff also asserts that Officers were inordinately slow to respond despite Johnny Castro and his men escalating tensions and refusing to follow orders from 911 Operators as well as the palpable potential for violence.

77. Therefore, Plaintiff is informed and believes that BPD officers were not properly trained to employ sound, basic police procedures, investigatory techniques, or rational analysis. Alternatively, if Officers allegedly received such training, and chose to disregard it, then the issue becomes a failure to supervise said Officers on the part of BPD, its executives, and/or supervisory personnel.

**3. BPD Failed To Train In Relation To Report Writing, And Failed To Properly Supervise As A Result.**

78. Both Plaintiff and Tammy Lynn Hanson requested copies of police reports associated with their 911 calls for assistance. Both were told that no such reports existed.

79. Thus, according to the BPD, there are "no" contemporaneous reports of the events in question herein. In other words, there is no written record as to what BPD Officers allegedly thought and/or based their decisions upon during the events alleged herein.

12

COMPLAINT FOR DAMGES: GLORIA JEAN ISGAR V. CITY OF BAKERSFIELD, CA. ET AL

80. Plaintiff is informed and believes that BPD supervising officers and/or management should have required a report related to the events in question, given the dispatching of multiple units to the scene and the Officers' decision to unlawfully evict the Plaintiff rather than simply ordering the Castro men to leave.

81. Plaintiff is informed and believes that senior BPD personnel cannot reasonably supervise BPD field Officers, if the latter are not routinely required to prepare and file reports. Without said reports, BPD supervisors have no way of confirming the activities of their subordinates, and no way of assessing their job performance.  Thus, Plaintiff is informed and believes that the failure to require that Officers write reports is yet further indicia of the lack of training and/or supervision of said Officers by BPD executives and/or supervisory personnel.

**4.  BPD Officers Were Not Trained Or Supervised To Seek Out Guidance From Superior Officers, And/Or Report Observed Misconduct.**

82. Given the dispatching of multiple BPD units to her residence on May 26th, Plaintiff is informed and believes that multiple officers witnessed and/or participated in the unlawful adjudication of civil matters and/or the unlawful conduct of fellow Officers.

83. Thus, Plaintiff is informed and believes that "at least one" officer should have recognized that other officers were improperly handling the situation.  Similarly, Plaintiff is informed and believes that "at least one" Officer should have asked the lead Officer "why" the Castro men were not being arrested and/or forced to leave the scene immediately.  Lastly Plaintiff is informed and believes that "at least one" Officer should have suggested seeking guidance from supervisory Officers prior to unlawfully ejecting Plaintiff from her residence.

84. Thus, Plaintiff is informed and believes BPD has failed to train and/or supervise its Officers to ensure that such Officers know to seek supervisorial guidance, and/or to question and report observed misconduct on the part of fellow Officers.

**5.  BPD Failed To Train/Supervise On The Use Of Criminal Information Systems And Proper And Effective Communications.**

85. BPD received at least two calls for assistance regarding the "same" perpetrators at the "same" location just three days before the assault on May 26th.  Thus, there was a prior history of

13

COMPLAINT FOR DAMGES: GLORIA JEAN ISGAR V. CITY OF BAKERSFIELD, CA. ET AL

problems with the Castro men unlawfully harassing the Plaintiff at her Residence.

86. Plaintiff is informed and believes that Officers should have been apprised of that call history by 911 Operators and/or dispatch. Alternatively, Plaintiff is informed and believes that Officers should have made themselves aware of that information by way of the information systems and computers installed in most if not all BPD patrol vehicles.

87. Plaintiff is informed and believes that dispatch did not inform responding Officers of said call history and that Officers did not avail themselves of that information by reference to in-vehicle computer systems. If Officers had properly utilized said systems, Plaintiff is informed and believes they would have been aware of the call history and more likely to arrest the perpetrators of crime, rather than re-victimize, crime victims.

88. Alternatively, if Officers "were" aware of the call history and "still" forced the Plaintiff from her home regardless of said history, then Plaintiff would posit that such blatant refusal to consider that history in their decision making is further indication of BPD's failure to train and/or supervise Officers.

89. For the foregoing reasons, Plaintiff is informed and believes that municipal and/or official capacity liability should attach to the City, the BPD, and its Chief Mr. Lyle D. Martin, due to the multiple failures to train and/or supervise personnel engaged in obviously wrongful conduct.

**6. No Qualified Immunity.**

90. Plaintiff is informed and believes that the actions taken against her by BPD Officers were fundamentally at odds with well-known and well-established principles of law.

91. Plaintiff is informed and believes that even a lay person, without benefit of legal or law enforcement training, knows that officers can't decide civil matters such as matters of probate, intestate succession, and/or real estate law.

92. Thus, Plaintiff asserts that responding Officers were "not" called upon to make a decision in an unsettled and/or uncertain area of law. On the contrary, law enforcement's lack of authority to act in civil matters is a matter of common knowledge not requiring any particular legal expertise, and should have been known to properly trained, professional Officers.

14

COMPLAINT FOR DAMGES: GLORIA JEAN ISGAR V. CITY OF BAKERSFIELD, CA. ET AL

93. Moreover, given the presence of multiple units at Plaintiff home, she is informed and believes that no exigency requiring split-second decision existed. This was not a foot chase; the Officers didn't have to decide whether to draw a weapon in the heat of the moment. Multiple Officers were present at Plaintiff's residence, and the scene was under control.

94. Plaintiff is informed and believes that Officers should have plainly and simply required Johnny Castro and his men to leave immediately and follow proper and ordinary civil procedure in the future.

95. Instead Officers simply "gave" Plaintiff's residence to the Castro men. One responding Officer even went so far as to order the Plaintiff to "hurry up" and get out of her own home. As a result, she left without her prescription medication and with only three articles of clothing.

96. Therefore, Plaintiff is informed and believes that the defendants should not enjoy the benefit of qualified immunity. Plaintiff is further informed and believes that municipal and/or official capacity liability should attach based on the apparent failure to train and/or supervise in multiple areas of law enforcement, all which of directly led to the unlawful actions of BPD Officers.

## CAUSES OF ACTION

**1. FIRST CLAIM FOR RELIEF:  Violation Of 42 U.S.C. § 1983 (Fourth and Fourteenth Amendments).  [As to all Defendants].**

97. Plaintiff incorporates by reference, as if set forth fully herein, all preceding allegations and facts above.

98. Plaintiff is informed and believes that the extra-judicial adjudication of a civil matter by BPD Officers, and their incorrect conclusions related thereto directly resulted in violation of Plaintiff's rights to due process of law pursuant to the 4th and 14th Amendments to the United States Constitution, thereby giving rise to liability under 42 U.S.C. § 1983.

99. Plaintiff is informed and believes that Officers should have simply restored the peace and maintained the status quo as between competing civil claimants. Instead, BPD Officers wrongfully forced the Plaintiff from her residence and gave possession custody and control

15

COMPLAINT FOR DAMGES: GLORIA JEAN ISGAR V. CITY OF BAKERSFIELD, CA. ET AL

thereof to the Castro men.

100.  Thus, Plaintiff hereby asserts that responding BPD Officers violated her Constitutional rights and 42 U.S.C. 1983 during the course and scope of their employment as Officers of the Bakersfield Police Department.

101.  Plaintiff is further informed and believes that supervisory Officers on duty at the time of the events in question, the City, the BPD, BPD supervisory personnel, including its Chief, share in the liability for said violations given the multiple failures to train, monitor, and/or supervise the actions of its Officers as detailed above.

102.  As a direct result of said violations, Plaintiff suffered damages.  Plaintiff seeks recovery of damages for lost property, pain, suffering, emotional distress and humiliation, as well as statutory attorney's fees and punitive damages where said damages are available and/or a Defendant is not immune therefrom.

**2.  SECOND CLAIM FOR RELIEF: Violation of California Civil Code Section 52.1, et seq (Bane Act) [as to all Defendants].**

103.  Plaintiff reasserts and re-alleges all succeeding allegations and assertions above, as if set forth fully herein.

104.  As set forth immediately above, Plaintiff is informed and believes that the Bakersfield Police Department and its Officers violated Plaintiff's Constitutional rights.

105.  Above, beyond, and apart from the actions violating Plaintiff's Constitutional rights, BPD Officers also unlawfully threatened and/or coerced the Plaintiff by way of their threats to immediately arrest and/or incarcerate her if she did not comply with their unlawful demands.

106.  Therefore, in the alternative, Plaintiff is informed and believes that the Officers' actions also give rise to liability pursuant to California Civil Code 52.1.  As a direct result thereof, Plaintiff suffered damages.  Therefore, Plaintiff seeks all recoverable damages for violation of Cal. Civ. Code § 52.1 including but not limited to treble damages, loss of property, pain suffering, emotional distress, statutory attorney's fees and punitive damages where available.

107.  Lastly, Plaintiff is informed and believes that municipal and/or official capacity liability should apply due to the failures to train and/or supervise detailed above.

16

COMPLAINT FOR DAMGES: GLORIA JEAN ISGAR V. CITY OF BAKERSFIELD, CA. ET AL

**3.   THIRD CLAIM FOR RELIEF:  Negligence [as to all Defendants].**

108.  Plaintiff reasserts and re-alleges all succeeding allegations and assertions above, as if set forth fully herein.

109.  Plaintiff is informed and believes and thereon alleges that she was owed a duty of care by the BPD.

110.  Further, Plaintiff is informed and believes that the actions of the Defendants alleged herein were objectively unreasonable.

111.  But for the involvement and negligence of Bakersfield Police Department Officers, the Plaintiff would not have been wrongfully ejected from her residence.  As a direct result thereof, Plaintiff suffered damages.

112.  Moreover, Plaintiff's damages are also a proximate cause of organizational, municipal and/or supervisory negligence in failing to train and/or supervise BPD Officers.

113.  Plaintiff seeks recovery for said damages resulting from her loss of property, emotional distress pain and suffering.   Plaintiff also seeks punitive damages, where available. Officer's acted in knowing or reckless disregard of the Plaintiff's rights as well as their own authority.

**4.   FOURTH CLAIM FOR RELIEF: Intentional/Negligent Infliction of Emotional Distress [as to all Defendants].**

114.  Plaintiff reasserts and re-alleges all succeeding allegations and assertions above, as if set forth fully herein.

115.  As alleged in detail above, the Defendants were well aware of the Plaintiff's emotional state resulting from the unexpected loss of her father just days before the events in question.

116.  Moreover, BPD Officers knew or should have known that their unlawful eviction of the Plaintiff from her residence was in excess of their Constitutional authority.  Yet, BPD Officers proceeded to do so anyway, and in disregard of said knowledge.

117.  As alleged above, Plaintiff is informed and believes that the City, BPD and its Chief should share in the liability for said violations, based upon the failures of those Defendants to

17

COMPLAINT FOR DAMGES: GLORIA JEAN ISGAR V. CITY OF BAKERSFIELD, CA. ET AL

properly train and supervise Officers, as detailed above.

118.   In addition to knowingly acting in excess of their authority, Officers physically intimidated the Plaintiff though she just suffered threats of imminent physical violence over the course of approximately two hours.  Officers then wrongfully ordered Plaintiff to vacate her Residence immediately or be arrested.  Officers then admonished the Plaintiff to "hurry up" and get out of her own home, resulting in Plaintiff leaving with virtually nothing more than the clothes on her back and without needed medication.

119.   Therefore, Plaintiff is informed and believes that BPD Officers intentionally inflicted emotional distress upon her by knowingly undertaking the foregoing actions despite knowing the obvious wrongfulness thereof.

120.   In the alternative, if BPD Officers were properly trained and/or supervised, they should have known that they lacked authority to eject the Plaintiff from her Residence, because said action is at odds with long-established and well-known principles of law.  To the extent that Officers were not properly trained and/or supervised on these issues, then municipal and/or official capacity lability should attach.

121.   Therefore, in the alternative, Plaintiff is informed and believes that the Defendants negligently inflicted emotional distress upon the Plaintiff.

122.   As a direct result of the BPD's actions, and but for said actions, the Plaintiff suffered emotional upset, pain and suffering.  Plaintiff seeks recovery for said damages as well as punitive damages where available, and immunity form such damages does not apply.

**PRAYER FOR RELIEF**

123.   WHEREFORE Plaintiff seeks the following, all in amounts to be determined by jury at time of trial.

1.   For compensatory damages for loss of property, emotional distress, pain and/or suffering in amounts to be determined at the time of trial;

2.   For reasonable costs of suit and statutory attorney's fees where recoverable and as determined at the time of trial and/or by the Court;

3.   For punitive damages, in amounts to be determined at the time of trial, where said

18

damages are recoverable, and except where any defendant may be immune from liability specifically as to punitive damages;

4. For such further relief as the Court may determine to be just, proper, appropriate, and in conformity with the evidence adduced at trial.

## DEMAND FOR JURY TRIAL

123.  Plaintiff hereby demands trial by jury on all causes for which jury trail is available.

///

///

Respectfully submitted

Dated: 3-29-2018          Law Office of Alfred R. Hernandez


By:  /s/ Alfred R. Hernandez, Esq.

Counsel for Plaintiff Gloria Jean Isgar

19

COMPLAINT FOR DAMGES: GLORIA JEAN ISGAR V. CITY OF BAKERSFIELD, CA. ET AL