# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA JEAN ISGAR,<br><br>**Plaintiff**<br><br>v.<br><br>CITY OF BAKERSFIELD, et al.,<br><br>**Defendants** | CASE NO. 1:18-CV-0433 AWI JLT<br><br>**ORDER ON DEFENDANTS' MOTIONS TO DISMISS, TO STRIKE, AND FOR MORE DEFINITE STATEMENT**<br><br>(Doc. Nos. 17, 18, 19) |

    This is a civil rights case brought by Plaintiff Gloria Isgar ("Isgar") against the City of Bakersfield ("the City") and six police officers of the Bakersfield Police Department. In her First Amended Complaint ("FAC"), Isgar alleges claims under 42 U.S.C. § 1983 for violations of the Fourth, Fifth, and Fourteenth Amendments, and state law claims for violation of California Civil Code § 52.1, negligence, and intentional and negligent infliction of emotional distress. Currently before the Court are three motions by Defendants, a Rule 12(b)(6) motion to dismiss, a Rule 12(e) motion for more definite statement, and a Rule 12(f) motion to strike. For the reasons, that follow, Defendants' motions will be granted.

## **BACKGROUND**

    From the FAC, Isgar is the 68-year old daughter of John F. Castro. Isgar was the primary caretaker of her father. Isgar paid rent to her father resided with him in a house on Laurel Dr. in Bakersfield, California. Isgar had personal effects in the house, received mail at the house, and

maintained her own prescription in the house. On May 21, 2017, Isgar's father passed away unexpectedly.

On May 23, 2017, Isgar's brother, Johnny Castro ("Castro"), and his four adult sons barged into the house on Laurel Dr. without invitation. The men said that they were looking for a document related to the decedent, but shortly thereafter became belligerent and physically intimidating and threatening. The men began carrying away property and told Isgar that this was not her house anymore and that she needed to "get the fuck out." Isgar became fearful and called 911. Other members of Isgar's family were present and they can be heard arguing with Castro's sons in the 911 call. Isgar told the operator that her father had died two days earlier and that Castro and his sons were "ganging up on us." Six minutes later, Isgar's daughter in law called 911 and tearfully told the operator that Castro was threatening Isgar and telling her to "get the fuck out of the house."

Castro and his sons left prior to any police personnel arriving. When Bakersfield police officers arrived, Isgar's daughter in law explained the actions of Castro and asked if the officers would make a report. The officers said that they would not make a report and that this was a "civil matter." The officers did state that Isgar should call the police if Castro returned.

On May 26, 2017, Castro returned to Isgar's house, along with his four sons and two other adult men who were unknown to Isgar. Fearing for her safety, Isgar called 911 at 8:07 p.m. Over the ensuing two hours, ten calls were made by various people for assistance at the house. During one call, an operator explained that what was occurring was a civil matter. However, after about two hours had elapsed from Castro's arrival, Bakersfield police officers finally arrived. During this two hour window, Castro and his men verbally threatened Isgar with physical violence and attempted to enter the house, pounded on walls and doors, and disrupted the house's electricity supply. After about an hour, one of Castro's men called 911. The operator instructed the men to leave and wait in their vehicles because they were escalating the situation, but they refused to comply with the operator's instructions. About 20 minutes later, another one of Castro's men called 911 and requested that an officer come to the scene. The caller said that the men had paperwork, asked to speak to a watch commander, and said that "this is gonna go down real

quick." When Bakersfield police officers were dispatched, they were informed that this was a "civil matter" and a "family 415."

When officers arrived, Isgar informed them that her father had died five days ago, she had called 911 three days ago, she lived at the house, and the Castro men did not live there. Instead of restoring the peace, the officers made Isgar surrender possession of the house. The Castro men showed the officers a power of attorney related to the house. Isgar disputed the authenticity and legality of the power of attorney. Despite Isgar's lawful tenancy, her objections to the power of attorney, her objections to the presence of the Castro men, and the non-existence of a court order, the City police officers determined the property rights and obligations as between Isgar and the Castro men. The officers told Isgar that the power of attorney was "valid." One officer said that the Castros were the owners, Isgar was just a tenant, and that she had to leave. The officers ordered Isgar out of her house, instructed her to give them the house key, and informed her that she would be arrested if she did not comply. Isgar complied and the officers gave the house key to Castro (or one his men). Isgar was given only a few short moments to gather up her belongings and leave. An officer followed Isgar through the house and told her to "hurry up." Isgar was so distraught, she forgot to take her necessary prescription medications. Isgar stood in the street as she watched Castro and his men ransack the house. Castro and his men eventually changed the locks and nailed the doors shut.

Isgar petitioned the Kern County Superior Court for a Domestic Violence Restraining Order against Castro based on the events of May 23 and May 26, 2017. A hearing was held and testimony was received, including testimony from Isgar, her daughter-in-law, Castro, and one of Castro's sons. Judge Fielder granted the restraining order. In the course of ruling, Judge Fielder explained that only a court order would have permitted Castro and his men to take possession of the house, and that the document the Castros possessed was essentially irrelevant. Judge Fielder further explained that even if the Castros had a valid court order, law enforcement, and not them, were the only ones who could enforce it. Judge Fielder explained that this was the law and it was designed to prevent potentially violent situations.

# I. RULE 12(f) MOTION TO STRIKE

*Legal Standard*

Rule 12(f) of the Federal Rules of Civil Procedure allows the court to strike from "any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating spurious issues by dispensing with those issues prior to trial. See Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir 2010); Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir.1983). Immaterial matter is defined as matter that "has no essential or important relationship to the claim for relief or the defenses being pleaded." Whittlestone, 618 F.3d at 974; Hawkins v. Medtronic, Inc., 62 F.Supp.3d 1144, 1149 (E.D. Cal. 2014). Impertinent matter is defined as "statements that do not pertain, and are not necessary, to the issues in question." Whittlestone, 618 F.3d at 974; Hawkins, 62 F.Supp.3d at 1149. Scandalous matters are allegations "that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court," and "includes allegations that cast a cruelly derogatory light on a party or other person." Hawkins, 62 F.Supp.3d at 1149; see also Pigford v. Veneman, 215 F.R.D. 2, 4 (D. D.C. 2003). Redundant allegations are allegations that "constitute a needless repetition of other averments or are foreign to the issue." Hawkins, 62 F.Supp.3d at 1149 Sliger v. Prospect Mortg., LLC, 789 F.Supp.2d 1212, 1216 (E.D. Cal. 2011). Granting a motion to strike may be proper if it will make the trial less complicated or if allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading will be prejudicial to the moving party. See Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527-28 (9th Cir. 1993);[1] Hawkins, 62 F.Supp.3d at 1149. The grounds for the motion to strike must appear on the face of the pleading or from matters that are properly the subject of judicial notice. See Fantasy, 984 F.2d at 1528. Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy. Hawkins, 62 F.Supp.3d at 1149; Sliger, 789 F.Supp.2d at 1216.

---

[1] Reversed on other grounds, Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994)

*Defendants' Argument*

Defendants argue that the FAC contains a paragraph relating to a news report regarding Defendant Ryan Maxwell in which he ran a red light while in a police car. However, this information is completely unrelated to any allegation or constitutional violation in the FAC. No purpose is served by including the allegation and it is irrelevant, impertinent, and scandalous.

*Plaintiff's Opposition*

Isgar argues *inter alia* that Paragraph 76 is relevant to a history of misconduct by Maxwell and the City's response thereto. If the City took no corrective actions against Maxwell and treated him with kid gloves, then his actions on May 26, 2017 would be foreseeable because a person who engages in misconduct without correction is likely to continue to engage in misconduct. Isgar also argues that a 2004 report from the Department of Justice found that reporting and supervisory problems with the City police department existed. Isgar argues that Maxwell's conduct shows that the City has not corrected the problem.

*Paragraph 76*

Paragraph 76 of the FAC in its entirety reads:

"As but one example Plaintiff is informed and believes that Officer Ryan Maxwell has a documented history of breaching basic law enforcement policy and procedure. On or about Thursday February 18, 2016, Bakersfield news station KBAK/KBFX reported on eye witness accounts that Officer Maxwell entered into an intersection against a red light without the use of lights and sirens, and/or ensuring that the intersection against a red light was clear prior to running the red light. Plaintiff is informed and believes that in doing so Officer Maxwell ignored basic and proper law enforcement policy and procedure, which resulted in an injury to the public."

*Discussion*

Isgar alleges six *Monell* theories, but Paragraph 76 is included with respect to the first claim, improper training "regarding the constitutional limits of [officers'] authority." This *Monell* theory posits that even if the situation with Castro was a "civil matter," the officers improperly adjudicated the rights and liabilities of competing civil claimants in the areas of probate, intestate succession, and real property based on a power of attorney, but no court order. See FAC ¶¶ 73-74.

The FAC alleges that officers cannot adjudicate civil matters, and because this is common sense, City officers are not sufficiently trained as to the most basic limits of their constitutional authority and/or the most basic police procedures. See id. at ¶ 75. Paragraph 76 follows.

After review, the Court does not find that Paragraph 76 is material to this case. For purposes of *Monell* liability, any alleged prior constitutional violations must be similar to the constitutional violations at issue. Strauss v. City of Chicago, 760 F.2d 765, 768-69 (7th Cir. 1985); Severi v. County of Kern, 2017 U.S. Dist. LEXIS 209613, *13 (E.D. Cal. Dec. 19, 2017); Johnson v. Holmes, 2017 U.S. Dist. LEXIS 173743, *26-*28 (W.D. Va. Oct. 19, 2017); Lopez v. City of Plainfield, 2017 U.S. Dist. LEXIS 10220, *37-*38 (D. N.J. Jan. 25, 2017); Stratakos v. Nassau Cty., 2016 U.S. Dist. LEXIS 162714, *12-*14 (E.D. N.Y. Nov. 23, 2016); Johnson v. City of Vallejo, 99 F.Supp.3d 1212, 1219-20 (E.D. Cal. 2015); Barnes v. City of Milton, 2009 U.S. Dist. LEXIS 95460, *8 (W.D. Wash. Oct. 13, 2009). Maxwell's driving habits have nothing to do with any resolution or adjudications of civil matters or resolving a family domestic disturbance. Running a red light is not remotely close to the situation with Isgar and Castro. As such, the red light incident is not admissible to show a *Monell* violation.

Isgar's primary argument appears to be that a failure to discipline for one policy violation will foreseeably lead to violations of other, unrelated policies. Aside from the fact that it is unknown whether Maxwell was disciplined, Isgar's argument would effectively swallow the rule that prior conduct must be similar to the unconstitutional conduct at issue. Unrelated prior actions could simply be recharacterized broadly as general "misconduct" and admitted under a *Monell* theory, no matter how dissimilar the prior acts are to either each other or to the particular constitutional violation at issue. It is telling that Isgar cites no cases or authority in support of her argument.

Second, the Ninth Circuit has recognized that "a custom or practice can be supported by evidence of repeated constitutional violations which went uninvestigated and for which the errant municipal officers went unpunished." Hunter v. County of Sacramento, 652 F.3d 1225, 1236 (9th Cir. 2011). Running a red light is not a constitutional violation, and, again, there are no allegations regarding any discipline, correction, or investigation of Maxwell concerning his

driving habits.  There is no reasonable connection between running a red light and the allegedly unconstitutional conduct at issue.

Without more from Isgar, Paragraph 76 is so unrelated to the unconstitutional conduct at issue that it is immaterial and impertinent.  See Whittlestone, 618 F.3d at 974; Hawkins, 62 F.Supp.3d at 1149.  Therefore, Paragraph 76 will be stricken.

**II.     RULE 12(b)(6) MOTION TO DISMISS**

*Defendants' Arguments*

Defendants argue that several claims should be dismissed.  First, the individual officers are sued in both their individual and official capacities.  However, the City is also a named defendant, which makes suit against the officers in their official capacities redundant.  Second, Isgar's Fifth Amendment claim should be dismissed because the Fifth Amendment applies only to federal actors, not to state officials.  Third, Isgar's claim for negligent infliction of emotional distress should be dismissed because that is not a stand alone cause of action and Isgar has alleged a negligence claim.  Fourth, Isgar has not alleged any specific conduct by any individual officer.  No facts indicate what any officer did or did not do, even though Isgar has sufficient information to identify the officers as defendants.

*Plaintiff's Opposition*

Isgar argues that the FAC is detailed and alleges that what the officers did and that the officers acted as a unit in handling the call.  Further, the FAC describes how the officers failed to engage in basic investigative techniques or seek additional supervisory guidance.  Isgar argues that there appears to be inadequate reports by the officers, and very little cooperation by defense counsel regarding identification of officers.  The Ninth Circuit has rejected attempts of officers to hide their identities.

*Legal Standard*

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

absence of sufficient facts alleged under a cognizable legal theory. See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960. The Ninth Circuit has distilled the following principles for Rule 12(b)(6) motions: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014). In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters subject to judicial notice. In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1051 (9th Cir. 2014). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if

8

no request to amend the pleading was made . . . ." Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016).  However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities.  Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

*Discussion*

1. Fifth Amendment Claim

The Fifth Amendment's due process clause "only applies to the federal government," it does not apply to local/state law enforcement officials.  Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008).  Isgar concedes that she does not have a viable Fifth Amendment claim.  See Doc. No. 22 at 13:10-11.  Therefore, Isgar's Fifth Amendment claim will be dismissed without leave to amend.  See Bingue, 512 F.3d at 1174.

2. Negligent Infliction of Emotional Distress

In California, there is no independent tort of "negligent infliction of emotional distress," rather the tort is negligence, and emotional distress damages are available when the defendant breaches a duty owed to the plaintiff.  See Doe v. Gangland Prods., 730 F.3d 946, 961 (9th Cir. 2013); Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 984-85 (1993); Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., 48 Cal.3d 583, 590 (1989).  Isgar concedes that her negligent infliction claim is subsumed by her separate negligence claim.  See Doc. no. 22 at 13:12-13.  Therefore, Isgar's negligent infliction of emotional distress claim will be dismissed without leave to amend.  Doe, 730 F.3d at 961; Potter, 6 Cal.4th at 984-85.

3. Official Capacity Claims

A lawsuit against an individual police officer in his official capacity is really a suit against the municipal entity that employs the officer.  Kentucky v. Graham, 473 U.S. 159, 165-67 (1985); Valadez-Lopez v. Chertoff, 656 F.3d 851, 859 n.3 (9th Cir. 2011); McFarland v. City of Clovis, 163 F.Supp.3d 798, 808 (E.D. Cal. 2016).  "When officers in their official capacity and the local government entity for whom they work are both named in a lawsuit, the officers in their official capacity are redundant defendants and may be dismissed."  Alcay v. City of Visalia, 2013 U.S. Dist. LEXIS 90160, *8 (E.D. Cal. June 25, 2013) (quoting Wisler v. City of Fresno, 2007 U.S.

Dist. LEXIS 18666, *19 (E.D. Cal. Mar. 16, 2007)); see McFarland, 163 F.Supp.3d at 808. Because the City is a defendant, the naming of six individual City police officers in their official capacities is unnecessary and redundant.

Isgar appears to argue that the Court should not dismiss because a jury could be confused and reluctant to assign blame to an officer as an individual even though the actor was acting in an official capacity. Isgar's argument is unclear and unsupported by citation to any relevant authority. If anything, one individual sued in two capacities creates a greater danger of jury confusion, as opposed to a suit against the employer and the employee as separate parties. Jury instructions and verdict forms can be clearly demarcated as applying only to the officers or only to the City. This Court has never had a jury express any confusion when both the officer and the employing municipality are defendants. Isgar's argument is based on speculation and does not actually address the redundancy created by the official capacity claims in this case.

Isgar also argues that the joint representation of all Defendants by the same counsel raises a potential conflict of interest under *Dunton v. Suffolk Cnty. N.Y.*, 729 F.2d 903 (2d Cir. 1984) and is a reason to keep the official capacity claims. First, it seems that having officers sued in their individual and official capacities would exacerbate any conflict. Second, *Dunton* involved a situation in which a county argued that one of its officers was not acting under color of law, but rather as an irate husband. See Dunton, 729 F.2d at 906. Here, there has been no answer to the FAC and there is a question regarding the sufficiency of the FAC. In this district, it is the norm for entities and employees to be represented by the same counsel. Until there is a pleading or discovery response that indicates that the City will argue that an officer was not acting under color of state law, a *Dunton* situation is not present.[2] Although the Court has the ability to address conflicts to assure fairness, see Smiley v. Director of Workers Compensation Programs, 984 F.2d

---

[2] Plaintiff's counsel states that defense counsel has refused to stipulate that the defendants were acting under color of law. However, nothing in the complaint addresses the correspondence and there is no basis to consider such a correspondence within the context of a Rule 12(b)(6) motion. See In re NVIDIA, 768 F.3d at 1051 (explaining that a Rule 12(b)(6) motion is resolved by examining the allegations in the complaint, exhibits attached to the complaint, matters that may be judicially notices, and documents incorporated by reference in the complaint). Further, defense counsel replied that until the sufficiency of the FAC has been determined, it is not willing to make any stipulations that could affect liability. At this stage in the proceedings, the Court cannot say that defense counsel's position is unreasonable or clearly implicates a *Dunton* situation.

278, 282-83 (9th Cir. 1993) (citing *inter alia* Dunton, 729 F.2d at 909), there is not a sufficient indication that court action is necessary at this time. Third, state law applies to issues of attorney disqualification. In re County of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000). To the extent that Isgar is attempting to move for disqualification of defense counsel based on a conflict interest, unless Isgar was also represented by defense counsel or her firm, Isgar lacks standing to do make such a motion. See Hechavarria v. City & Cnty. of San Francisco, 2010 U.S. Dist. LEXIS 97764, *3-*4 (N.D. Cal. Sept. 17, 2010); Koo v. Rubio's Restaurants, Inc., 109 Cal.App.4th 719, 729 (2003); Civil Service Comm'n v. Superior Ct., 163 Cal.App.3d 70, 76-77 (1984).

In sum, the Court will dismiss the claims against the defendant police officers in their official capacities as redundant. See McFarland, 163 F.Supp.3d at 808.

### 4. Fourteenth Amendment Claim

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) deprived her of rights secured by the Constitution or federal law. Long v. County of L.A., 442 F.3d 1178, 1185 (9th Cir. 2006). "A person subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). As such, a plaintiff cannot hold an officer liable "because of his membership in a group without a showing of individual participation in the unlawful conduct." Jones v. Williams, 297 F.3d 930, 935 (9th Cir. 2002); see Motley v. Parks, 432 F.3d 1072, 1082 (9th Cir. 2005). That is, a defendant is not liable merely by being present at the scene and part of a "team effort." Chuman v. Wright, 76 F.3d 292, 294-95 (9th Cir. 1996). Instead, a plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation." Jones, 297 F.3d at 935; see Torres v. City of L.A., 548 F.3d 1197, 1206 (9th Cir. 2008). "Integral participation" requires "some fundamental involvement in the conduct that allegedly caused the violation." Blankenhorn v. City of Orange, 485 F.3d 463, 481 n.12 (9th Cir. 2007); see Torres, 548 F.3d at 1206. However, "'integral participation' does not require that each officer's actions

themselves rise to the level of a constitutional violation." Boyd v. Benton Cnty, 374 F.3d 773, 780 (9th Cir. 2004); see Keates v. Koile, 883 F.3d 1228, 1241 (9th Cir. 2018). Therefore, with some exceptions, a complaint should explain how each defendant participated in or is liable for each constitutional violation allegedly committed. See Greer v. City of Highland Park, 884 F.3d 310, 315-16 (6th Cir. 2018); Bryson v. Gonzales, 534 F.3d 1282, 1290 (10th Cir. 2008); Wong v. United States INS, 373 F.3d 952, 967 (9th Cir. 2004); Young v. City of Visalia, 687 F.Supp.2d 1141, 1154 (E.D. Cal. 2009).

Here, there are six officers identified by name as defendants. However, the FAC does not identify conduct by any individually named defendant during the events of May 26.[3] Rather, defendants are identified collectively or generically. The nature of the allegations, as summarized above, suggest that the officers may have been integral participants in the alleged unconstitutional conduct. The Court reads the allegations as indicating that the power of attorney was reviewed, a decision was made that the power of attorney was valid and entitled the Castros to possession, and a decision was made to force out or "evict" Isgar from the house upon pain of arrest. However, for this theory to be plausible, additional allegations are necessary.

First, the FAC references a lead officer. The Court finds that it is likely that the lead officer made the relevant determinations regarding ownership and rights to possession of the house. However, the FAC does not clarify who made these determinations. If the lead officer made the determination, the allegations should expressly state that,[4] and the name of the officer(s) who made the relevant decisions and determinations needs to be alleged. See Greer, 884 F.3d at 315-16; Bryson, 534 F.3d at 1290; Wong, 373 F.3d at 967. The Court understands that there are circumstances in which a plaintiff may not know the identity of the officer who violated her constitutional rights. See Dubner v. City & Cnty. of San Francisco, 266 F.3d 959, 965 (9th Cir. 2001); Young, 687 F.Supp.2d at 1153-54. To excuse a failure to expressly identify a particular officer's conduct, a complaint should include allegations that show why the plaintiff cannot reasonably identify the officer. E.g. Young, 687 F.Supp.2d at 1153-54 (complaint contained

---

[3] The FAC alleges that Defendant Maxwell authored a brief report, but does not identify his actions at the house.

[4] Of course, if Isgar heard a group of officers make the determination, she should so allege.

12

allegations that demonstrated the plaintiff was kept apart from defendants and could not have had an opportunity to identify the acts of the defendants during a search). Hypothetically, if Isgar alleged that the officer in charge did not identify himself to her and she could not see his name tag, then she would be excused from providing a name and could rely on the discovery process to later make a specific identification. Further, to help provide notice to the officers, Isgar should be able to include at least a general physical description of the relevant officer, to the extent that a physical description would be helpful.[5] See Young, 687 F.Supp.2d at 1154. For example, if the lead officer was alleged to be over 6' tall and had a mustache, and all other officers were under 6' and had no facial hair, then defendants would likely be put on notice as to who Isgar believed was in charge and making key decisions. Unfortunately, even though Isgar and her family members appear to have been present and interacted with the defendant officers, the FAC does not contain allegations that sufficiently explain the failure to identify the conduct of individual officers, nor does it provide any physical descriptions of any officer.

Second, the FAC alleges that the officers responded together, functioned in support of each other and the decision to "evict," and that six officers witnessed, participated in, condoned, or furthered the "eviction." See FAC ¶¶ 12, 91. A reasonable reading of these allegations is that the six defendant officers were present and knew of the decision to evict. However, the allegations do not allege that each defendant was "performing some function necessary to the completion of a police goal [or that each defendant] continued their actions despite knowledge of a constitutional violation." Wisler v. City of Fresno, 2007 U.S. Dist. LEXIS 18666, *15-*16 (E.D. Cal. Mar. 16, 2007). That is, with limited exception, no individual conduct is identified other than being present and "supporting" the eviction in some unknown fashion.[6] In order for an integral participation theory to be viable, there must be allegations that indicate that the non-decision making officers

---

[5] If all officers present were of a similar build and appearance, then a general physical description would not be helpful and would not need to be alleged.

[6] The FAC alleges that an officer followed Isgar while she was collecting her belongings and told her to "hurry up." The Court is satisfied that this officer integrally participated in the eviction. However, the "hurry up" officer is not identified by name or physical description. The same identification issues that surround the lead officer also applies to the "following officer." Isgar should allege why she cannot identify the "hurry up" officer by name and provide a physical description, if a physical description would be helpful.

13

each knew of the property rights determination and each officer somehow participated meaningfully in enforcing that determination by evicting Isgar.[7]  Cf. Boyd, 374 F.3d at 780 (finding that officers who part of a search were all "integral participants" where (1) each officer stood armed behind the individual that deployed the flash-bang; (2) each officer participated in some meaningful way in the search operation which used the flash-bang; and (3) each officer participated in the search knowing that a flash-bang would be used but failed to object.). Otherwise, merely being on scene as part of "unit" during a 911 call for family disturbance is not integral participation.

In sum, although the FAC alleges that officers were present and knew of the decision to evict, the actions of the individual officers that would constitute "meaningful participation" are not identified. The Court will dismiss the first cause of action, but because the Court finds that it is likely that Isgar will be able to cure the deficiencies discussed above, dismissal will be with leave to amend.[8]

### III. RULE 12(e) MOTION FOR MORE DEFINITE STATEMENT

*Defendants' Argument*

Defendants argue that there is no indication if Isgar is bringing an Equal Protection claim, a Substantive Due Process claim, or a Procedural Due Process claim. Without this clarification, Defendants argue that they cannot evaluate the factual allegations or determine how to respond.

*Plaintiff's Opposition*

Isgar argues that allegations are sufficient to show that the officers' conduct give rise to due process concerns. Isgar states that her substantive due process rights in her abode, as well as procedural due process rights, were implicated. Isgar argues that there is nothing stopping the defendants from responding with a simple denial.

---

[7] There are many ways to participate in improper conduct. As applied to this case, integral participation may include giving orders, carrying out orders, and making oneself visible as physical back-up to the lead officer.

[8] The Court notes that Defendants' reply expresses confusion over the dates of May 23, May 26, and May 31. However, the FAC states that officers exceeded their authority on May 26. See FAC ¶ 1. The Court reads the FAC as alleging constitutional violations that occurred on May 26 only.

1 *Legal Standard*

2 Rule 12(e) allows a party to "move for a more definite statement of a pleading to which a
3 responsive pleading is allowed but which is so vague or ambiguous that the party cannot
4 reasonably prepare a response." Fed. R. Civ. P. 12(e). That is, if a "pleading fails to specify the
5 allegations in a manner that provides sufficient notice, a defendant can move for a more definite
6 statement under Rule 12(e) before responding." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514
7 (2002). Rule 12(e) motions attack "the unintelligibility of the complaint, not simply the mere lack
8 of detail, and is only proper when a party is unable to determine how to frame a response to the
9 issues raised by the complaint." Neveau v. City of Fresno, 392 F.Supp.2d 1159, 1169 (E.D. Cal.
10 2005). Rule 12(e) motions are disfavored and rarely granted. Castaneda v. Burger King Corp.,
11 597 F.Supp.2d 1035, 1045 (N.D. Cal. 2009). Where a party understands the substance of the
12 claim asserted and can obtain the details sought in the Rule 12(e) motion through discovery, a
13 Rule 12(e) motion need not be granted. Griffin v. Cedar Fair, L.P., 817 F.Supp.2d 1152, 1156
14 (N.D. Cal. 2011).

15 *Discussion*

16 Initially, Isgar's opposition does not mention the Fourteenth Amendment Equal Protection
17 Clause, but instead focuses on the Due Process clause. Therefore, the Court takes Isgar's
18 opposition to mean that she is not pursuing a Fourteenth Amendment Equal Protection claim.

19 With this understanding, the Court agrees with Defendants that a more definite statement is
20 required. The FAC's allegations do not explain whether Isgar is pursuing either a substantive due
21 process claim or a procedural due process claim or both. Indeed, Isgar's opposition highlights the
22 ambiguity: "it should be self-evidence the asserted factual allegations give rise to *either, or both,*
23 of the recognized causes of action under Fourteenth Amendment due process." Doc. No. 24 at
24 4:5-7 (emphasis added). This is not a situation where a defendant is attempting to force a plaintiff
25 to provide more details. E.g. Castaneda, 597 F.Supp.2d at 1045-46 (denying a Rule 12(e) motion
26 that sought to force the plaintiff to provide specific dates so that the defendant could allege a
27 statute of limitations defense). This is a situation where the cause of action itself is unclear. A
28 defendant should not have to guess at what claims are actually being asserted against him. Clearly

15

identifying the constitutional provision/right at issue not only permits a defendant to intelligibly respond to a complaint, but it may also hasten settlement efforts, more efficiently direct discovery, and avoid disputes at later junctions (such as trial or summary judgment) over what claims are included within a complaint. Where there is a legitimate ambiguity over what constitutional claim is alleged, it is a better use of judicial resources to grant a Rule 12(e) motion at the beginning of litigation.

In sum, because it is unclear what Fourteenth Amendment claims are at issue, the motion for more definite statement will be granted, and Isgar will be required to expressly identify which Fourteenth Amendment due process claims (substantive, procedural, or both) she is pursuing.

## **CONCLUSION**

Defendants' Rule 12(f) motion to strike will be granted because Paragraph 76 involves an incident that is not a constitutional violation and that is dissimilar to the circumstances of this case.

Defendants' Rule 12(e) motion will be granted because the FAC is ambiguous as to whether Isgar is pursuing substantive due process claims or procedural due process claims or both.

Defendants' Rule 12(b)(6) motion to dismiss will be granted. As acknowledged by Isgar, her Fifth Amendment and negligent infliction of emotional distress claims are not and cannot be viable. Thus, they will be dismissed without leave to amend. The official capacity claims against the individual defendants will be dismissed as redundant because the City is a named defendant. Finally, Isgar's § 1983 claims will be dismissed with leave to amend because additional allegations are necessary that describe the officers' meaningful participation, physically describe relevant defendants, and explain why the actions of individual officers are not identified/alleged, even though Isgar and her family appear to have been present and interacting with the officers on the scene.[9]

---

[9] Isgar's opposition argues that her allegations "potentially give rise to officer liability for failing to intervene and/or conspiracy." Doc. No. 22 at 8:11-20. This argument highlights another potential ambiguity with the FAC. If Isgar wishes to pursue these claims, then she will be required to expressly allege them as part of an amended complaint. A "potential theory" does not constitute sufficient notice for purposes of Rule 8. The failure to expressly allege either of these theories will signal to the Court and the Defendants that Isgar will not be pursuing them. Of course, if Isgar believes that she currently does not have sufficient evidence to allege these claims, but later obtains sufficient evidence, she may attempt to amend her complaint at that time.

16

# **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss (Doc. No. 17) is GRANTED in that:
    a. Plaintiff's Fifth Amendment claim within the first cause of action is DISMISSED without leave to amend;
    b. Plaintiff's first cause of action is DISMISSED with leave to amend;
    c. Plaintiff's fourth cause of action for negligent infliction of emotional distress is DISMISSED without leave to amend;
2. Defendants' motion to strike (Doc. No. 18) is GRANTED and Paragraph 76 is STRICKEN without leave to amend;
3. Defendants' motion for more definite statement (Doc. No. 19) is GRANTED and Plaintiff shall clarify, and include any additional allegations as may be appropriate in support of her claim(s), whether she is pursuing a Fourteenth Amendment Substantive Due Process claim, a Fourteenth Amendment Procedural Due Process claim, or both;
4. Within twenty-one days from service of this order, Plaintiff may file an amended complaint that is consistent with this order; and
5. Within fourteen days of Plaintiff's filing an amended complaint, Defendants shall file a response to the amended complaint.

IT IS SO ORDERED.

Dated:   October 10, 2018                              _____
                                                                           SENIOR DISTRICT JUDGE